IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

ACNR RESOURCES, INC.,
**Employer Below, Petitioner**

**FILED**
**August 6, 2025**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**v.) No. 25-ICA-9**    (JCN: 2023008854)

**DANIELLE GOFF,**
**Claimant Below, Respondent**

## MEMORANDUM DECISION

Petitioner ACNR Resources, Inc. ("ACNR") appeals the December 9, 2024, order of the Workers' Compensation Board of Review ("Board"). Respondent Danielle Goff filed a response.[1] ACNR did not reply. The issue on appeal is whether the Board erred in reversing the claim administrator's order, which granted a 3% permanent partial disability ("PPD") award and instead granted an additional 3% award, for a total PPD award of 6%.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Board's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On October 24, 2022, Ms. Goff's right leg was injured when a rail track weighing approximately one ton fell onto her right leg. Ms. Goff arrived at Ruby Memorial Hospital ER by ambulance and was examined by David Hubbard, M.D., an orthopedist. Dr. Hubbard opined that x-rays showed a fracture of the right tibia, fibula, and ankle. Dr. Hubbard performed surgery on the same day with intramedullary nailing of the right tibia fracture and right distal fibula fracture for the diagnoses of right tibia and fibula shaft fracture and right distal fibula fracture.

Ms. Goff completed an Employees' and Physicians' Report of Occupational Injury or Disease ("WC-1") form on the same day. Dr. Hubbard completed the Physicians' section of the form on November 7, 2022, and identified the diagnosis as a right tibia fracture and a right fibula fracture. On November 9, 2022, Dr. Hubbard noted that Ms. Goff was two weeks out from surgery and that she had been doing very well overall. Ms. Goff was given a referral for physical therapy ("PT") and she was advised to start working on some range

---

[1] ACNR is represented by Aimee M. Stern, Esq. Danielle Goff is represented by Christopher J. Wallace, Esq.

1

of motion exercises on her own and progressing as pain allows. It was anticipated that she would remain off work for approximately three months after surgery.

Ms. Goff was seen by Michelle Bramer, M.D., on April 24, 2023. It was noted that Ms. Goff was six months out from her surgery, and she was participating in PT. Dr. Bramer found that Ms. Goff's fibula fracture did not heal and continued to cause pain and problems. As a result, Dr. Bramer performed an open reduction and internal fixation for a right fibula nonunion on May 16, 2023. Ms. Goff was given an order for PT to work on range of motion, strength, balance, endurance, and gait training.

On August 11, 2023, Dr. Bramer noted that Ms. Goff was three months out from the second surgery. Ms. Goff reported some numbness on the top of her foot and some anterior knee pain. Dr. Bramer opined that the tibia was well healed, the distal fibula had healed, and the fibular nonunion had progressed significantly and was nearly healed as well. Dr. Bramer indicated that Ms. Goff should continue with PT as she likely had quadricep atrophy, vastus medialis oblique atrophy, and patellofemoral syndrome symptoms. Dr. Bramer stated that, when Ms. Goff returned in one month, she may be able to start with work conditioning or hardening. Dr. Bramer opined that Ms. Goff would be able to do light duty, including sedentary or office-type work, but that she should not do any heavy lifting or squatting at this time.

Ms. Goff returned to Dr. Bramer's office on September 11, 2023, and reported that she thought the PT had been helping her. Ms. Goff further reported that she still had some leg pain and weakness and numbness over the dorsum of the foot. Dr. Bramer noted that Ms. Goff had full knee range of motion and could fully extend and flex the knee, but that there was some obvious quadricep atrophy. An x-ray obtained on that same day showed intact surgical hardware with overall progression of healing of the right tibia-fibula. Dr. Bramer opined that overall, Ms. Goff was progressing well at that point, but she should continue working with PT, especially for her quadricep strength. A referral was given for PT and/or conditioning.

On October 3, 2023, Prasadarao Mukkamala, M.D., evaluated Ms. Goff. Dr. Mukkamala noted that Ms. Goff was injured at work on October 24, 2022, when she was struck by a rail, injuring her right leg and that she underwent surgery with intramedullary nailing on October 24, 2022, for fractures of the tibia and fibula. Dr. Mukkamala further noted that the fibula fracture resulted in nonunion, and that Ms. Goff underwent a second surgery on May 16, 2023. Ms. Goff reported pain in the right knee and a limp during walking. Dr. Mukkamala stated that a physical examination of the lower extremities revealed slight limitation of motion at the right foot with inversion and eversion, the sensory examination revealed diminution of sensation in the distribution of the right superficial peroneal nerve, and there was no deformity and no instability in the right lower extremity. Dr. Mukkamala concluded that Ms. Goff was at MMI from the October 24, 2022, compensable injury, and he opined that she did not require any additional diagnostic studies and/or treatment other than one or two more office visits with her surgeon, Dr. Bramer.

2

Using the American Medical Association's *Guides to the Evaluation of Permanent Impairment* (4th ed. 1993) ("*Guides*"), Dr. Mukkamala found that Ms. Goff had 1% whole-person impairment ("WPI") for range of motion abnormalities in the hindfoot, 0% WPI for ankle range of motion, and 0% for right knee range of motion. Dr. Mukkamala further found that Ms. Goff had 2% WPI for atrophy, 1% for the thigh, and 1% for the calf. These were combined for 3% WPI for the compensable injury.

On October 13, 2023, Ms. Goff returned for a follow-up with Dr. Bramer. Ms. Goff was five months out from her second surgery. Ms. Goff reported that she continued to have pain along her anterior knee and swelling at the end of the day; she also continued to have tingling sensations across the top of her right foot. Dr. Bramer noted that an x-ray of the tibia-fibula showed that the fibula fracture had healed, the hardware was stable without sign of loosening or failure, and the previous tibia fracture had also healed. Dr. Bramer encouraged Ms. Goff to continue working on quadricep strengthening exercises on her own, use topical pain medications, and consider a compression stocking to help with swelling control. Ms. Goff was released to return to work with no restrictions on October 16, 2023.

By order dated October 17, 2023, the claim administrator granted a 3% PPD award based on Dr. Mukkamala's evaluation. Mr. Goff protested this order to the Board.

Bruce Guberman, M.D., evaluated Ms. Goff and issued a report dated March 5, 2024. Ms. Goff reported constant pain throughout the right ankle and foot, especially the lateral aspect of the right ankle and foot, as well as in the medial aspect of the right ankle; stiffness and swelling, as well as weakness and instability of her right ankle; and that she had fallen due to her symptoms. Ms. Goff stated that prolonged standing and walking caused increased symptoms. On examination, there was moderate tenderness. A sensory exam revealed moderate decreased sensation with tingling at the dorsal aspect of the right foot. Dr. Guberman's impression was right tibia and fibular shaft fracture and right distal fibula fracture; status post intramedullary nailing of right tibia fracture and right distal fibula fracture; and status post open reduction internal fixation of right fibula nonunion. He found Ms. Goff to be at MMI.

Using the *Guides*, Dr. Guberman found 3% WPI for range of motion abnormalities in extension of the right ankle and 2% WPI for range of motion abnormalities in inversion and eversion of the right hindfoot. These were combined for a total of 5% WPI for range of motion abnormalities. Further, Dr. Guberman found from Table 20 on page 151 that Ms. Goff fell under Class 3 for 40% sensory impairment, for a 1% WPI. The 1% WPI was combined with the 5% WPI for range of motion abnormalities for a total of 6% WPI due to the compensable injury. Dr. Guberman concluded Ms. Goff had 6% WPI and recommended an additional 3% PPD as she had already received a 3% award for this injury.

On December 9, 2024, the Board reversed the claim administrator's order granting a 3% PPD award and instead granted an additional 3% award, for a total PPD award of 6%. The Board found that Ms. Goff established that she was entitled to a 6% PPD award. ACNR now appeals the Board's order.

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
>
> (1) In violation of statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the Board of Review;
> (3) Made upon unlawful procedures;
> (4) Affected by other error of law;
> (5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Syl. Pt. 2, *Duff v. Kanawha Cnty. Comm'n*, 250 W. Va. 510, 905 S.E.2d 528 (2024).

ACNR argues that the Board erred in finding Dr. Mukkamala's conclusions to be entitled to less weight than those of Dr. Guberman, because Dr. Mukkamala's findings are more consistent with those of Ms. Goff's treating physician, Dr. Bramer.

Here, the Board found that Ms. Goff had established that she is entitled to a 6% PPD award. Further, the Board found that Dr. Guberman provided more specific range of motion findings related to the right lower extremity than Dr. Mukkamala, and Dr. Guberman's report was more reliable than Dr. Mukkamala's. The Board noted that, although Ms. Goff's range of motion was more restricted at the time of Dr. Guberman's evaluation, the record did not contain any evidence establishing that his findings were not reliable and valid for impairment rating purposes. The Board noted that Dr. Bramer indicated in her October 2023 medical record that Ms. Goff had good plantar flexion dorsiflexion but found that it did not diminish the reliability of Dr. Guberman's range of motion findings. The Board stated that, "[i]t is not possible to ascertain what Dr. Bramer's indication of 'good' equals when comparing this statement with findings of permanent impairment."

4

Upon review, we find that the Board was not clearly wrong in finding that, based on the medical evidence, Ms. Goff had established that she is entitled to a 6% PPD award. Further, we conclude that the Board was not clearly wrong in determining that Dr. Guberman's report was more reliable than Dr. Mukkamala's report. As the Supreme Court of Appeals of West Virginia has set forth, "[t]he 'clearly wrong' and the 'arbitrary and capricious' standards of review are deferential ones which presume an agency's actions are valid as long as the decision is supported by substantial evidence or by a rational basis." Syl. Pt. 3, *In re Queen*, 196 W. Va. 442, 473 S.E.2d 483 (1996). With this deferential standard of review in mind, we cannot conclude that the Board was clearly wrong when it granted a 3% PPD award and instead granted an additional 3% award, for a total PPD award of 6%.

Accordingly, we affirm the Board's December 9, 2024, order.

Affirmed.

**ISSUED:** August 6, 2025

**CONCURRED IN BY:**

Chief Judge Charles O. Lorensen
Judge Daniel W. Greear
Judge S. Ryan White

5